MARK C. ZEBROWSKI (BAR NO. 110175)
MZebrowski@mofo.com
JOHN R. LANHAM (BAR NO. 289382)
JLanham@mofo.com
KEVIN M. BROWN (BAR NO. 306698)
KBrown@mofo.com
MORRISON & FOERSTER LLP
12531 High Bluff Drive, Suite 100
San Diego, CA 92130
Telephone:  858.720.5100
Facsimile:  858.720.5125

Attorneys for Plaintiffs
BRANDON DUNCAN and AARON HARVEY

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRANDON DUNCAN, an individual; and AARON HARVEY, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF SAN DIEGO, a California municipal corporation; RUDY CASTRO, in his individual and official capacity; SCOTT HENDERSON, in his individual and official capacity; and DOES 1-10, in their official capacities, <br><br> Defendants. | Case No.  **'17 CV 0052 BTM MDD** <br><br> **COMPLAINT FOR VIOLATION OF CONSTITUTIONAL RIGHTS UNDER THE CIVIL RIGHTS ACT (42 U.S.C. § 1983)** <br><br> **JURY TRIAL DEMANDED** |

CASE NO._____
COMPLAINT

sd-687439

**COMPLAINT**

Plaintiff Brandon Duncan and Plaintiff Aaron Harvey seek entry of judgment in their favor against Defendants the City of San Diego, Rudy Castro (in his individual and official capacity), Scott Henderson (in his individual and official capacity), and Does 1 through 10 (in their official capacities) (collectively and individually, "Defendants") and in support of such Complaint allege as follows.

This is a civil action under 42 U.S.C. § 1983 seeking damages against Defendants for committing acts, under color of law, that deprived Brandon Duncan and Aaron Harvey of their rights secured by the United States Constitution. Defendants targeted Plaintiffs for arrest, and caused them to be arrested and jailed for seven months, because Plaintiffs engaged in speech or expressive conduct protected by the First Amendment.  By causing Plaintiffs' arrest without probable cause, as well as causing the search of Plaintiff Brandon Duncan's home without a warrant, consent, or exigent circumstances, Defendants also violated Plaintiffs' Fourth Amendment rights.

**JURISDICTION**

1.      This case arises under the United States Constitution and 42 U.S.C. § 1983.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

2.      The Court has personal jurisdiction over Defendants as each is domiciled in or has substantial, continuous, and systematic contact with the State of California.

3.      Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events giving rise to Mr. Harvey's and Mr. Duncan's claims occurred in this district.

CASE NO._____

COMPLAINT

sd-687439

**PARTIES**

4.     Plaintiff Brandon Duncan is a musician, father, and resident of San Diego, California.  Mr. Duncan was raised in the Lincoln Park neighborhood of San Diego and currently resides there.

5.     Plaintiff Aaron Harvey is a college student, community organizer, and resident of San Diego, California.  Mr. Harvey was raised in the Lincoln Park neighborhood of San Diego and currently resides there.

6.     Defendant City of San Diego is a California municipal corporation organized, acting, and existing under the laws of California.  The City of San Diego Police Department is the law enforcement division of the City of San Diego and is organized under the City Charter of the City of San Diego.

7.     Defendant Rudy Castro was, at all times discussed herein, a detective with the City of San Diego Police Department.  He is sued in his individual and official capacity.

8.     Defendant Scott Henderson was, at all times discussed herein, a detective with the City of San Diego Police Department.  He is sued in his individual and official capacity.

9.     Does 1 through 10 at all relevant times herein were officers, officials, and/or employees of the City of San Diego Police Department and/or City of San Diego, who made, delegated, or ratified the decisions described herein that violated Plaintiffs' Constitutional rights.  Plaintiffs are ignorant of the true names of Does 1 through 10 and this information is peculiarly within the knowledge of Defendants. Plaintiffs therefore sue by fictitious names.  Plaintiffs will amend this Complaint to allege the true names of Does 1 through 10 when that information is ascertained. Does 1 through 10 are sued in their official capacities.

10.     With respect to all facts and allegations stated in this Complaint, Defendants acted under color of state law.

2

CASE NO._____

COMPLAINT

sd-687439

## FACTS

### *Brandon Duncan's Arrest*

11.     Mr. Duncan is a musician, hip-hop artist, and rapper.  Among other subjects, Mr. Duncan's music is about Lincoln Park, where he grew up.

12.     While Mr. Duncan's passion is music, it has not made him wealthy. Prior to the events described in this Complaint, Mr. Duncan primarily earned a living by laying tile.  Mr. Duncan still chose to dedicate himself to making music.

13.     On the morning of June 19, 2014, while Mr. Duncan was preparing to go to work, he heard voices outside his home.  When he opened his door to investigate, he was confronted by a group of armed officers from the San Diego Police Department.

14.     Mr. Duncan was arrested and detained in a police car outside of his home for several hours.  Despite having no warrant for the search of his home, consent, or exigent circumstances, police officers searched and ransacked Mr. Duncan's home.

15.     On information and belief, Mr. Duncan's arrest and the unlawful search of Mr. Duncan's home were the direct and proximate result of decisions by Defendant Castro, Defendant Henderson, Does 1 through 10, and final policymakers within the City of San Diego.

16.     Mr. Duncan was then brought to a San Diego Police Department station, where he was met by Defendant Castro and Defendant Henderson. Defendant Castro and Defendant Henderson informed Mr. Duncan that he had been arrested because of the content of his music lyrics.  Mr. Duncan was booked into jail.

17.     A complaint was filed against Mr. Duncan, Mr. Harvey, and others in San Diego County Superior Court on June 20, 2014, and Mr. Duncan was arraigned on the complaint the same day.  He pleaded not guilty, and his bond was set at $500,000, which he was unable to post.  He remained in detention pending trial.

CASE NO._____

COMPLAINT

sd-687439

*Aaron Harvey's Arrest*

1

2   18.   In July 2014, Mr. Harvey lived in Las Vegas, Nevada, where he was

3   studying to become a realtor.  On July 19, 2014, Mr. Harvey was leaving his Las

4   Vegas apartment when he was swarmed and arrested by armed agents from the

5   United States Marshals Service.

6   19.   On information and belief, Mr. Duncan's arrest was the direct and

7   proximate result of decisions by Defendant Castro, Defendant Henderson, Does 1

8   through 10, and final policymakers within the City of San Diego.

9   20.   During his arrest, the Marshals told Mr. Harvey that he was wanted for

10  a number of murders in San Diego, California.  Mr. Harvey had no idea what the

11  Marshals were referring to and assumed that there had been a serious mistake that

12  would quickly be resolved.

13  21.   Mr. Harvey was taken to jail in Las Vegas, where he was kept in a

14  holding tank for three days before being assigned a cell.  Mr. Harvey spent the next

15  three weeks in the Las Vegas jail.  He still did not understand why he had been

16  arrested and was becoming increasingly worried about what was happening to him.

17  22.   Approximately three weeks after his arrest, Defendant Castro and

18  Defendant Henderson picked up Mr. Harvey from the Las Vegas jail.  Defendant

19  Castro and Defendant Henderson drove Mr. Harvey from Las Vegas to San Diego

20  in a San Diego Police Department SUV.  Defendants kept Mr. Harvey handcuffed

21  the entire time.

22  23.   During the drive from Las Vegas to San Diego, Defendant Castro and

23  Defendant Henderson did not explain to Mr. Harvey why he had been arrested.

24  Mr. Harvey was transferred to San Diego jail upon his arrival.

25  24.   Mr. Harvey was arrested on a warrant issued on June 18, 2014, by the

26  San Diego County Superior Court based on a declaration by Defendant Castro, in

27  which Castro recommended bail of $1,000,000.  The court approved the

28  recommendation and set bail in the warrant at $1,000,000.

CASE NO._____

COMPLAINT

sd-687439

25.     Mr. Harvey was booked into San Diego County Jail on July 30, 2014. He was subsequently arraigned on the complaint and pleaded not guilty.  The court set bail at $1,100,000, which Mr. Harvey could not post.  He remained in detention pending trial.

### *Wrongful Charges and Incarceration*

26.     The complaint charged Mr. Duncan and Mr. Harvey, among others, with several counts under California Penal Code section 182.5.

27.     Mr. Duncan and Mr. Harvey were transferred to the George Bailey Detention Facility for the bulk of their detention.  George Bailey Detention Facility's reputation for violence is so great that it is commonly known as the "Thunderdome" and "gladiator school."  Mr. Duncan and Mr. Harvey were housed in bunk rooms each housing 36 inmates.

28.     A preliminary hearing for Mr. Duncan, Mr. Harvey, and others was held in November 2014, at which Defendants Castro and Henderson testified to facts allegedly supporting probable cause for the charges against Mr. Duncan and Mr. Harvey.

29.     According to the facts testified to by Defendants Castro and Henderson at the preliminary hearing, the arrest and detention of Mr. Duncan and Mr. Harvey were based on speech or expressive conduct protected by the First Amendment.

30.     According to the facts testified to by Defendants Castro and Henderson at the preliminary hearing, the arrest and detention of Mr. Duncan and Mr. Harvey were not supported by probable cause.

31.     Despite expressing significant reservations, the court initially found probable cause existed to charge Mr. Duncan and Mr. Harvey, among others, with violating section 182.5.

32.     An information was filed against Mr. Duncan, Mr. Harvey, and others on December 4, 2014.  The information charged Mr. Duncan and Mr. Harvey with

CASE NO._____

COMPLAINT

sd-687439

1  several counts under section 182.5.  They were arraigned on the information and

2  pleaded not guilty to all charges against them.  Mr. Duncan's bail remained at

3  $500,000 and Mr. Harvey's bail remained at $1,100,000, and they remained in

4  detention pending trial.

5          33.     At a subsequent preliminary hearing involving several other

6  individuals charged in the same case with Mr. Duncan and Mr. Harvey, the court

7  found no probable cause for section 182.5 charges against the other individuals.

8          34.     After spending seven months in jail, Mr. Duncan and Mr. Harvey

9  unexpectedly had their bail lowered to amounts for which they were able to post

10  bond.  Mr. Duncan was released from jail on January 19, 2015.  Mr. Harvey was

11  released from jail on January 21, 2015.

12          35.     Mr. Duncan and Mr. Harvey moved to set aside the charges against

13  them pursuant to Penal Code section 995 on the ground that the evidence at the

14  preliminary hearing did not establish probable cause.

15          36.     On March 16, 2015, the Superior Court granted that motion and

16  dismissed all charges against Mr. Duncan and Mr. Harvey, finding that the evidence

17  at the preliminary hearing failed to establish probable cause that either had violated

18  section 182.5.

19          37.     Even though Mr. Harvey has now been out of jail for over a year, he

20  continues to suffer from the emotional trauma of living in such a violent and

21  restrictive environment.  Mr. Harvey still has nightmares about jail, becomes

22  nervous in crowded places, and continually worries that he could be jailed again

23  despite doing nothing wrong.  Mr. Harvey also continues to face the economic

24  consequences of his jail time in the forms of debt and poverty, and now lives with

25  his parents to save money.  And, of course, he spent seven months of his life

26  incarcerated and facing a life sentence for doing nothing illegal.

27          38.     Mr. Duncan's experience while being incarcerated was similarly

28  horrifying.   He was arrested one month after losing his father, and he lost his

CASE NO._____

COMPLAINT

sd-687439

grandfather, with whom he was very close, while in jail.  He was deprived of seeing his children.  Mr. Duncan continues to have difficulty sleeping.  He fears that something like this may happen to him again for no legitimate reason.  He is uncomfortable being in crowded places and around police officers.  He has also been significantly harmed financially, still owing money to his criminal defense lawyer.  Seven months of his life were taken and converted into incarceration with a potential life sentence for doing nothing illegal.

### The Unconstitutional Basis for Brandon Duncan's Arrest

39.     Defendant Castro and Defendant Henderson were the lead investigators on Mr. Duncan's case.  Defendant Castro and Defendant Henderson targeted Mr. Duncan for arrest and caused his arrest and detention and the search of his home, or set in motion a series of events that they knew or reasonably should have known would result in Mr. Duncan's arrest and detention and the search of his home.

40.     At the time of Mr. Duncan's arrest, Defendants Castro and Henderson were detectives with the San Diego Police Department.  In particular, Defendants Castro and Henderson were assigned to San Diego's Lincoln Park neighborhood. In the course of their duties, Defendants Castro and Henderson investigated a series of shootings between May 2013 and February 2014.

41.     No Defendant had any evidence that Mr. Duncan was involved in any way in these shootings.  Instead, Defendants targeted Mr. Duncan and caused his arrest and incarceration because of the content or viewpoint of Mr. Duncan's music, social media posts, or other speech or expressive conduct appearing in social media postings or otherwise.  Mr. Duncan's protected speech and conduct was a substantial or motivating factor for Defendants' action.

42.     Defendant Castro signed a declaration in support of issuing an arrest warrant for Mr. Duncan under section 182.5.  Despite being 14 pages long, this declaration alleges only a handful of facts pertaining to Mr. Duncan:

CASE NO._____

COMPLAINT

sd-687439

(1) Mr. Duncan was friends on Facebook with others who were allegedly members of the "Lincoln Park Blood" ("LPK") gang and "posted about their LPK membership;" (2) Mr. Duncan posted a message to his Facebook wall saying "Free Lil Hawg and Tae Dip" following the arrests of Tevonte Stripling and Desmond Crisp; and (3) Mr. Duncan was a member of a rap group called "Black Angel Music Group."

43.    No reasonably competent officer would have believed the facts stated in the declaration established probable cause to arrest Mr. Duncan.  No reasonably competent policymaker would have believed that the facts pertaining to Mr. Duncan justified his arrest.

44.    Mr. Duncan's arrest was directly and proximately caused by a final policymaking decision by one or more Defendants on behalf of Defendant City of San Diego.  The arrest of Mr. Duncan came as the result of a lengthy and extensive investigation by the City of San Diego Police Department, led by Defendants Castro and Henderson, in a case against dozens of other criminal defendants.  Moreover, Mr. Duncan was arrested under an obscure provision of the California Penal Code, section 182.5.  On information and belief, prior to the case against Mr. Duncan, section 182.5 had never been used against any defendant in San Diego, even though the law had existed for over fourteen years.  On information and belief, such a substantial undertaking using an untested statute could only be brought pursuant to the instruction or approval of a final policymaker for Defendant City of San Diego, or the deliberative indifference of a final policymaker of Defendant City of San Diego to violations of Mr. Duncan's First Amendment and Fourth Amendment rights.

45.    Mr. Duncan's arrest under the untested and obscure law section 182.5 was caused by final policymakers within Defendant City of San Diego (including Does 1-10) either delegating the authority to investigate and arrest Mr. Duncan to Defendants Castro and Henderson, ratifying the detectives' decision to investigate

CASE NO._____
COMPLAINT

sd-687439

1   and arrest Mr. Duncan, or themselves making the decision to investigate and arrest

2   Mr. Duncan.  In the alternative, on information and belief, a final policymaker, or

3   his or her delegate, made the decision to employ section 182.5 to pursue alleged

4   gang members based on their speech and expressive conduct, such as public

5   statements, music lyrics, and social media posts. The specific facts pertaining to

6   this policymaking decision are peculiarly within Defendants' knowledge or control.

7          46.    At time of his arrest and incarceration, Mr. Duncan had a clearly

8   established First Amendment right to freedom of speech, including but not limited

9   to writing and performing music, making photographs, posting comments and

10  photographs to social media, and engaging in expressive conduct.

11         47.    Defendants could not reasonably have understood there was probable

12  cause to believe any of Mr. Duncan's music, social media postings, or other speech

13  or expressive conduct fell within any exception to the First Amendment that

14  justified his arrest and incarceration.

15         48.    By causing Mr. Duncan's arrest and incarceration because of the

16  content or viewpoint of his speech or expressive conduct, Defendants violated Mr.

17  Duncan's clearly established constitutional rights under the First Amendment.

18         49.     At the time of his arrest and incarceration, Mr. Duncan also had a

19  clearly established Fourth Amendment right against unreasonable seizure of his

20  person and unreasonable search of his home.  That right includes the right to not be

21  arrested unless there is probable cause that he committed a crime, and the right

22  against a search of his home without a warrant, consent, or exigent circumstances.

23         50.    Defendants could not have reasonably believed that there was probable

24  cause to arrest Mr. Duncan under section 182.5 or that a search of his home was

25  justified without a warrant, consent, or exigent circumstances.

26         51.    By causing Mr. Duncan's arrest and incarceration despite having no

27  reasonable basis for believing probable cause existed, and causing the search of his

28

CASE NO._____

COMPLAINT

sd-687439

home without a warrant, consent, or exigent circumstances, Defendants violated Mr. Duncan's Fourth Amendment rights.

### The Unconstitutional Basis for Aaron Harvey's Arrest

52.   Defendants Castro and Henderson were the lead investigators on Mr. Harvey's case.  Defendants Castro and Henderson targeted Mr. Harvey for arrest and caused his arrest and detention, or set in motion a series of events that they knew, or reasonably should have known, would result in Mr. Harvey's arrest and incarceration.

53.   At the time of Mr. Harvey's arrest, Defendants Castro and Henderson were detectives with the San Diego Police Department.  In particular, Defendants Castro and Henderson were assigned to San Diego's Lincoln Park neighborhood. In the course of their duties, Defendants Castro and Henderson investigated a series of shootings between May 2013 and February 2014.

54.   No Defendant had any evidence that Mr. Harvey was involved in any way in these shootings.  Instead, Defendants targeted Mr. Harvey and caused his arrest and incarceration because of the content or viewpoint of Mr. Harvey's social media posts or other speech or expressive conduct appearing in social media postings or otherwise.  Mr. Harvey's protected speech and conduct was a substantial or motivating factor for Defendants' action.

55.   Defendant Castro signed a declaration in support of issuing an arrest warrant for Mr. Harvey under section 182.5.  Despite being 14 pages long, this declaration alleges only a handful of facts pertaining to Mr. Harvey: (1) Mr. Harvey was friends on Facebook with others who were allegedly members of the LPK gang, and "posted about their LPK membership;" (2) Mr. Harvey appeared in photographs posted to Facebook along with men who were allegedly LPK members; and (3) Mr. Harvey was said to be "keeping gang members in order."

CASE NO._____
COMPLAINT

sd-687439

56.     No reasonably competent officer would have believed the facts stated in the declaration established probable cause to arrest Mr. Harvey.  No reasonably competent policymaker would have believed that the facts pertaining to Mr. Harvey justified his arrest.

57.     Mr. Harvey's arrest was directly and proximately caused by a final policymaking decision by one or more Defendants on behalf of Defendant City of San Diego.  The arrest of Mr. Harvey came as the result of a lengthy and extensive investigation by the City of San Diego Police Department, led by Defendants Castro and Henderson, in a case against dozens of other criminal defendants. Moreover, Mr. Harvey was arrested under an obscure provision of the California Penal Code, section 182.5.  On information and belief, prior to the case against Mr. Harvey, section 182.5 had never been used against any defendant in San Diego, even though the law had existed for over fourteen years.  On information and belief, such a substantial undertaking using an untested statute could only be brought pursuant to the instruction or approval of a final policymaker for Defendant City of San Diego, or the deliberative indifference of a final policymaker of Defendant City of San Diego to violations of Mr. Harvey's First Amendment and Fourth Amendment rights.

58.     Mr. Harvey's arrest under the untested and obscure law section 182.5 was caused by final policymakers within Defendants City of San Diego (including Does 1-10) either delegating the authority to investigate and arrest Mr. Harvey to Defendants Castro and Henderson, ratifying the detectives' decision to investigate and arrest Mr. Harvey, or themselves making the decision to investigate and arrest Mr. Harvey.  In the alternative, on information and belief, a final policymaker, or his or her delegate, made the decision to employ section 182.5 to pursue alleged gang members based on their speech and expressive conduct, such as public statements and social media posts. The specific facts pertaining to this policymaking decision are peculiarly within Defendants' knowledge or control.

CASE NO._____

COMPLAINT

59.     At the time of his arrest and incarceration, Mr. Harvey had a clearly established First Amendment right to freedom of speech, including but not limited to making photographs, posting materials to social media, and engaging in expressive conduct.

60.     Defendants could not reasonably have believed there was probable cause to believe any of Mr. Harvey's social media postings or other speech or expressive conduct fell within any exception to the First Amendment that justified his arrest and incarceration

61.     By targeting Mr. Harvey and causing his arrest and incarceration because of the content or viewpoint of his speech or expressive conduct, Defendants violated Mr. Harvey's clearly established constitutional rights under the First Amendment.

62.     At the time of his arrest and incarceration, Mr. Harvey also had a clearly established Fourth Amendment right for protection from unreasonable seizure of his person.  That right includes the right to not be arrested unless there is probable cause that he committed a crime.

63.     Defendants could not have reasonably believed that there was probable cause to arrest Mr. Harvey under section 182.5.

64.     By causing Mr. Harvey's arrest and incarceration despite having no reasonable basis for believing probable cause existed, Defendants violated Mr. Harvey's Fourth Amendment rights.

## CAUSES OF ACTION

## COUNT ONE

## Violation of First Amendment Rights (42 U.S.C. § 1983)

**(Plaintiff Duncan against Defendants Castro and Henderson as individuals)**

65.     The foregoing allegations are incorporated as if re-alleged herein.

66.     Mr. Duncan engaged in speech or expressive conduct protected under the First Amendment.

CASE NO._____

COMPLAINT

sd-687439

67. Defendants Castro and Henderson acted under color of law in causing Mr. Duncan to be arrested and incarcerated because of his protected speech or expressive conduct.

68. Mr. Duncan's protected speech or expressive conduct was a substantial or motivating factor for Defendants' actions.

69. Defendants Castro and Henderson deprived Mr. Duncan of his rights under the First Amendment to the United States Constitution.

70. Mr. Duncan's First Amendment right to freedom of speech was clearly established, and the state of the law at the time of Defendants' conduct gave Defendants fair warning that their treatment of Mr. Duncan was unconstitutional.

71. As a direct and proximate result of the Defendants' violations of Mr. Duncan's constitutional rights, Mr. Duncan has suffered severe and substantial damages. These damages include lost salary, diminished earnings capacity, lost career and business opportunities, litigation expenses including attorney fees and costs of posting bond, loss of liberty, loss of reputation, humiliation, embarrassment, inconvenience, mental emotional anguish and distress, and other compensatory damages, in an amount to be determined by a jury and the Court.

## COUNT TWO

### Violation of Fourth Amendment Rights (42 U.S.C. § 1983)

**(Plaintiff Duncan against Defendants Castro and Henderson as individuals)**

72. The foregoing allegations are incorporated as if re-alleged herein.

73. Defendants Castro and Henderson acted under color of law in causing the seizure of Mr. Duncan's person by arrest and incarceration as well as the search of his home.

74. Defendants Castro and Henderson could not have reasonably believed that they had probable cause to arrest Mr. Duncan or the right to have his home searched without a warrant, consent, or exigent circumstances.

CASE NO._____

COMPLAINT

sd-687439

75.     Defendants Castro and Henderson deprived Mr. Duncan of his rights under the Fourth Amendment to the United States Constitution.

76.     Mr. Duncan's Fourth Amendment rights against unreasonable search and seizure were clearly established, and the state of the law at the time of Defendants' conduct gave Defendants Castro and Henderson fair warning that their treatment of Mr. Duncan was unconstitutional.

77.     As a direct and proximate result of the Defendants' violations of Mr. Duncan's constitutional rights, Mr. Duncan has suffered severe and substantial damages.  These damages include lost salary, diminished earnings capacity, lost career and business opportunities, litigation expenses including attorney fees and costs of posting bond, loss of liberty, loss of reputation, humiliation, embarrassment, inconvenience, mental emotional anguish and distress, and other compensatory damages, in an amount to be determined by a jury and the Court.

## COUNT THREE

### Violation of First Amendment Rights (42 U.S.C. § 1983)

### (Plaintiff Harvey against Defendants Castro and Henderson as individuals)

78.     The foregoing allegations are incorporated as if re-alleged herein.

79.     Mr. Harvey engaged in speech or expressive conduct protected under the First Amendment.

80.     Defendants Castro and Henderson acted under color of law in causing Mr. Harvey to be arrested and incarcerated because of his protected speech or expressive conduct.

81.     Mr. Harvey's protected speech or expressive conduct was a substantial or motivating factor for Defendants' actions.

82.     Defendants Castro and Henderson deprived Mr. Harvey of his rights under the United States Constitution.

CASE NO._____

COMPLAINT

sd-687439

83.     Mr. Harvey's right to free speech was clearly established, and the state of the law at the time of Defendants' conduct gave Defendants fair warning that their treatment of Mr. Harvey was unconstitutional.

84.     As a direct and proximate result of the Defendants' violations of Mr. Harvey's constitutional rights, Mr. Harvey has suffered severe and substantial damages.  These damages include lost salary, diminished earnings capacity, lost career and business opportunities, litigation expenses including costs of posting bond, loss of liberty, loss of reputation, humiliation, embarrassment, inconvenience, mental emotional anguish and distress, and other compensatory damages, in an amount to be determined by a jury and the Court.

## COUNT FOUR

### Violation of Fourth Amendment Rights (42 U.S.C. § 1983)

### (Plaintiff Harvey against Defendants Castro and Henderson as individuals)

85.     The foregoing allegations are incorporated as if re-alleged herein.

86.     Defendants Castro and Henderson acted under color of law in causing the seizure of Mr. Harvey's person by arrest and incarceration.

87.     Defendants Castro and Henderson could not have reasonably believed that they had probable cause to arrest Mr. Harvey.

88.     Defendants Castro and Henderson deprived Mr. Harvey of his rights under the Fourth Amendment to the United States Constitution.

89.     Mr. Harvey's Fourth Amendment right against unreasonable seizure was clearly established, and the state of the law at the time of Defendants' conduct gave Defendants fair warning that their treatment of Mr. Harvey was unconstitutional.

90.     As a direct and proximate result of the Defendants' violations of Mr. Harvey's constitutional rights, Mr. Harvey has suffered severe and substantial damages.  These damages include lost salary, diminished earnings capacity, lost career and business opportunities, litigation expenses including costs of posting

15

CASE NO._____

COMPLAINT

1  bond, loss of liberty, loss of reputation, humiliation, embarrassment, inconvenience,

2  mental emotional anguish and distress, and other compensatory damages, in an

3  amount to be determined by a jury and the Court.

4  ### COUNT FIVE

5  ### Violation of First Amendment Rights (42 U.S.C. § 1983)

6  **(Plaintiff Duncan against City of San Diego, Does 1-10 in their official**

7  **capacities, and Defendants Castro and Henderson in their official capacities)**

8        91.    The foregoing allegations are incorporated as if re-alleged herein.

9        92.    Mr. Duncan engaged in speech or expressive conduct protected under

10  the First Amendment.

11        93.    On information and belief, a final policymaker within Defendant City

12  of San Diego, and/or Does 1-10, Defendant Castro, and Defendant Henderson acted

13  under color of law in directly and proximately causing Mr. Duncan's arrest because

14  of his speech or expressive conduct.

15        94.    On information and belief, a final policymaker within Defendant City

16  of San Diego, and/or Does 1-10, Defendant Castro, and Defendant Henderson

17  deprived Mr. Duncan of his rights under the First Amendment.  Alternatively, on

18  information and belief, a final policymaker within Defendant City of San Diego,

19  and/or Does 1-10 knew of and specifically approved of Defendant Castro's and

20  Defendant Henderson's acts depriving Mr. Duncan of his rights under the First

21  Amendment, or acted with deliberate indifference with regard to Mr. Duncan's First

22  Amendment rights.  The specific facts of these decisions are peculiarly within

23  Defendants' knowledge or control.

24        95.    A final policymaker within Defendant City of San Diego, and/or Does

25  1-10, Defendant Castro, and Defendant Henderson had final policymaking authority

26  from the City of San Diego concerning these acts.

27

28

CASE NO._____

COMPLAINT

sd-687439

96.     When a final policymaker within Defendant City of San Diego, and/or Does 1-10, Defendant Castro, and Defendant Henderson engaged in these acts, he or she was acting as a final policymaker for the City of San Diego.

97.     Mr. Duncan's First Amendment right to freedom of speech was clearly established, and the state of the law at the time of Defendants' conduct gave Defendants fair warning that their treatment of Mr. Duncan was unconstitutional.

98.     As a direct and proximate result of the Defendants' violations of Mr. Duncan's constitutional rights, Mr. Duncan has suffered severe and substantial damages.  These damages include lost salary, diminished earnings capacity, lost career and business opportunities, litigation expenses including attorney fees and costs of posting bond, loss of liberty, loss of reputation, humiliation, embarrassment, inconvenience, mental emotional anguish and distress, and other compensatory damages, in an amount to be determined by a jury and the Court.

## COUNT SIX

### Violation of Fourth Amendment Rights (42 U.S.C. § 1983)

**(Plaintiff Duncan against City of San Diego, Does 1-10 in their official capacities, and Defendants Castro and Henderson in their official capacities)**

99.     The foregoing allegations are incorporated as if re-alleged herein.

100.   On information and belief, a final policymaker within Defendant City of San Diego, and/or Does 1-10, Defendant Castro, and Defendant Henderson acted under color of law in directly and proximately causing the seizure of Mr. Duncan's person by arrest and incarceration as well as the search of his home.  Alternatively, on information and belief, a final policymaker within Defendant City of San Diego and/or Does 1-10 knew of and specifically approved of Defendant Castro's and Defendant Henderson's acts causing the seizure of Mr. Duncan's person by arrest and incarceration as well as the search of his home, or acted with deliberate indifference with regard to Mr. Duncan's Fourth Amendment rights.  The specific facts of these decisions are peculiarly within Defendants' knowledge or control.

CASE NO._____

COMPLAINT

sd-687439

101.   A final policymaker within Defendant City of San Diego, and/or Does 1-10, Defendant Castro, and Defendant Henderson had final policymaking authority from the City of San Diego concerning these acts.

102.   Defendants could not have reasonably believed that they had probable cause to arrest Mr. Duncan or the right to have his home searched without a warrant, consent, or exigent circumstances.

103.   Defendants deprived Mr. Duncan of his rights under the Fourth Amendment to the United States Constitution.

104.   Mr. Duncan's Fourth Amendment rights against unreasonable search and seizure were clearly established, and the state of the law at the time of Defendants' conduct gave Defendants fair warning that their treatment of Mr. Duncan was unconstitutional.

105.   As a direct and proximate result of the Defendants' violations of Mr. Duncan's constitutional rights, Mr. Duncan has suffered severe and substantial damages.  These damages include lost salary, diminished earnings capacity, lost career and business opportunities, litigation expenses including attorney fees and costs of posting bond, loss of liberty, loss of reputation, humiliation, embarrassment, inconvenience, mental emotional anguish and distress, and other compensatory damages, in an amount to be determined by a jury and the Court.

## COUNT SEVEN

## Violation of First Amendment Rights (42 U.S.C. § 1983)

**(Plaintiff Harvey against City of San Diego, Does 1-10 in their official capacities, and Defendants Castro and Henderson in their official capacities)**

106.   The foregoing allegations are incorporated as if re-alleged herein.

107.   Mr. Harvey engaged in speech or expressive conduct protected under the First Amendment.

108.   On information and belief, a final policymaker within Defendant City of San Diego, and/or Does 1-10, Defendant Castro, and Defendant Henderson acted

CASE NO._____

COMPLAINT

1  under color of law in directly and proximately causing Mr. Harvey's arrest because

2  of his speech or expressive conduct.

3      109.   On information and belief, a final policymaker within Defendant City

4  of San Diego, and/or Does 1-10, Defendant Castro, and Defendant Henderson

5  deprived Mr. Harvey of his rights under the First Amendment.  Alternatively, on

6  information and belief, a final policymaker within Defendant City of San Diego

7  and/or Does 1-10 knew of and specifically approved of Defendant Castro's and

8  Defendant Henderson's acts depriving Mr. Harvey of his rights under the First

9  Amendment, or acted with deliberate indifference with regard to Mr. Harvey's First

10  Amendment rights.  The specific facts of these decisions are peculiarly within

11  Defendants' knowledge or control.

12      110.   A final policymaker within Defendant City of San Diego and/or Does

13  1-10, Defendant Castro, and Defendant Henderson had final policymaking authority

14  from the City of San Diego concerning these acts.

15      111.   When a final policymaker within Defendant City of San Diego, and/or

16  Does 1-10, Defendant Castro, and Defendant Henderson engaged in these acts, he

17  or she was acting as a final policymaker for the City of San Diego.

18      112.   Mr. Harvey's First Amendment right to freedom of speech was clearly

19  established, and the state of the law at the time of Defendants' conduct gave

20  Defendants fair warning that their treatment of Mr. Harvey was unconstitutional.

21      113.   As a direct and proximate result of the Defendants' violations of

22  Mr. Harvey's constitutional rights, Mr. Harvey has suffered severe and substantial

23  damages.  These damages include lost salary, diminished earnings capacity, lost

24  career and business opportunities, litigation expenses including costs of posting

25  bond, loss of liberty, loss of reputation, humiliation, embarrassment, inconvenience,

26  mental emotional anguish and distress, and other compensatory damages, in an

27  amount to be determined by a jury and the Court.

28

CASE NO._____

COMPLAINT

## COUNT EIGHT

### Violation of Fourth Amendment Rights (42 U.S.C. § 1983)

### (Plaintiff Harvey against City of San Diego, Does 1-10 in their official capacities, and Defendants Castro and Henderson in their official capacities)

114.   The foregoing allegations are incorporated as if re-alleged herein.

115.   On information and belief, a final policymaker within Defendant City of San Diego, and/or Does 1-10, Defendant Castro, and Defendant Henderson acted under color of law in directly and proximately causing the seizure of Mr. Harvey's person by arrest and incarceration.  Alternatively, on information and belief, a final policymaker within Defendant City of San Diego, and/or Does 1-10 knew of and specifically approved of Defendant Castro's and Defendant Henderson's acts causing the seizure of Mr. Harvey's person by arrest and incarceration, or acted with deliberate indifference with regard to Mr. Harvey's Fourth Amendment rights. The specific facts of these decisions are peculiarly within Defendants' knowledge or control.

116.   A final policymaker within Defendant City of San Diego, and/or Does 1-10, Defendant Castro, and Defendant Henderson had final policymaking authority from the City of San Diego concerning these acts.

117.   Defendants could not have reasonably believed that they had probable cause to arrest Mr. Harvey.

118.   Defendants deprived Mr. Harvey of his rights under the Fourth Amendment to the United States Constitution.

119.   Mr. Harvey's Fourth Amendment rights against unreasonable search and seizure were clearly established, and the state of the law at the time of Defendants' conduct gave Defendants fair warning that their treatment of Mr. Harvey was unconstitutional.

120.   As a direct and proximate result of the Defendants' violations of Mr. Harvey's constitutional rights, Mr. Harvey has suffered severe and substantial

CASE NO._____

COMPLAINT

sd-687439

1   damages.  These damages include lost salary, diminished earnings capacity, lost

2   career and business opportunities, litigation expenses including costs of posting

3   bond, loss of liberty, loss of reputation, humiliation, embarrassment, inconvenience,

4   mental emotional anguish and distress, and other compensatory damages, in an

5   amount to be determined by a jury and the Court.

6   ## PRAYER FOR RELIEF

7   WHEREFORE, Plaintiffs Aaron Harvey and Brandon Duncan request

8   judgment against all Defendants as follows:

9   1.   For appropriate compensatory damages in an amount to be determined

10   at trial;

11   2.   For appropriate equitable relief as allowed by 42 U.S.C. § 1983;

12   3.   For appropriate punitive damages as allowed by 42 U.S.C. § 1983;

13   4.   For appropriate declaratory relief regarding the unlawful and

14   unconstitutional acts and practices of Defendants;

15   5.   For an award of reasonable attorneys' fees, costs, and other expenses

16   as permitted by 42 U.S.C. § 1988, the Federal Rules of Civil Procedure, and other

17   applicable law; and

18   6.   For such other and further relief to which Plaintiffs may show

19   themselves justly entitled.

20   ## DEMAND FOR JURY TRIAL

21   Plaintiffs request a trial by jury on all issues so triable.

22

23

24

25

26

27

28

CASE NO._____

COMPLAINT

sd-687439

1

Respectfully submitted,

2

Dated:  January 10, 2017                    MORRISON & FOERSTER LLP

3

4                                                       By:  /s/ Mark C. Zebrowski

5                                                              Mark C. Zebrowski
                                                               MZebrowski@mofo.com

6                                                       Attorneys for Plaintiffs
7                                                       Brandon Duncan and Aaron Harvey

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CASE NO._____
COMPLAINT

sd-687439