UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRANDON DUNCAN, an individual; and AARON HARVEY, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF SAN DIEGO, a California municipal corporation; RUDY CASTRO, in his individual and official capacity; SCOTT HENDERSON, in his individual and official capacity; and DOES 1-10, in their official capacities<br><br>Defendants. | Case No.: 3:17-cv-00052-BTM-MDD<br><br>**ORDER OVERRULING OBJECTION TO DECLARATION OF CORNELIUS BOWSER AND DENYING MOTION TO STRIKE TESTIMONY**<br><br>**[ECF No. 40]** |

Defendants object to and have moved to strike the Declaration of Cornelius Bowser, which was submitted in support Plaintiffs' Motion for Partial Summary Judgment. (ECF Nos. 32-2 ("Decl.") and 40 ("Mot.")). Mr. Bowser's declaration posits that, based on his gang expertise, neither he nor a reasonably-well-trained police officer would interpret Plaintiffs' activities as evidence that they were active participants in the Lincoln Park Bloods ("LPK") or that they benefitted from that

1

gang's activities. (See Decl. ¶ 23). Defendants argue that Mr. Bowser does not qualify as a gang expert and that the Declaration is inadmissible pursuant to Federal Rule of Evidence 702, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 569 (1993) and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999). Mr. Bowser submitted a supplemental declaration responding to Defendants' challenge to his expertise. (ECF No. 42-3 ("Supp. Decl.")).

For the reasons set forth below, Defendants' objections are overruled and the Motion is DENIED without prejudice.

## I. **STANDARD**

Federal Rule of Evidence 702 provides, "a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if":

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Under Rule 702, expert testimony must be both relevant and reliable. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999). The trial court must act as a "gatekeeper" and ensure that "an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho,* 526 U.S. 137, 152 (1999).

The inquiry under Rule 702 is a "flexible" one, and the district court has "the discretionary authority . . . to determine reliability in light of the particular facts and circumstances of the particular case." *Kumho*, 526 U.S. at 158. Importantly,

the focus of the court's gatekeeping inquiry "must be solely on principles and methodology, not the conclusions that they generate." *Daubert*, 509 U.S. at 595. "When an expert meets the threshold established by Rule 702 . . . the expert may testify and the jury decides how much weight to give that testimony." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010).

## II. DISCUSSION

Defendants argue that Mr. Bowser is not qualified to testify as an expert because he has no specialized knowledge or training regarding gangs in general or the Lincoln Park Blood gang ("LPK") in particular, and his experience with gangs is "very limited." (Mot. at 5). Defendants object to Mr. Bowser's opinions regarding whether a "reasonably well-trained police officer" would identify Plaintiffs as gang members, arguing that he has no training or experience as a a police officer. (Mot. at 6, 8). Defendants further assert that Mr. Bowser's declaration should be excluded because he "uses an unexplained methodology" and fails to specify how he derived his knowledge about CalGang (a police database identifying gang members), gang interventions, LPK, or police officers making probable cause determinations. (Mot. at 7).

Courts largely agree that where the subject-matter is jargon-heavy communication and interaction between groups involved in illicit activity, an expert's field experience is of more significance than formalized, academic training. *See, e.g.*, *United States v. Plunk*, 153 F.3d 1011, 1017 (9th Cir.), *opinion amended on denial of reh'g*, 161 F.3d 1195 (9th Cir. 1998) ("Although [the] attorney sought to make much on voir dire of the fact that [individual testifying] had no formal training in the use of drug-culture code, we are not persuaded."); *United States v. Hoffman,* 832 F.2d 1299, 1310 (1st Cir.1987) ("[H]ard-core drug trafficking scarcely lends itself to ivied halls. In a rough-and-ready field such as this, experience is likely the best teacher."); *United States v. Delpit*, 94 F.3d 1134, 1145 (8th Cir. 1996) ("The argument that Murphy

was unqualified because he lacks degrees or advanced training in the field is silly. Sergeant Murphy has learned drug dealers' jargon through nearly 30 years of on-the-job experience, the best education there is for this type of thing."). Upon the Court's review of Mr. Bowser's two declarations, the Court concludes that Mr. Bowser possesses extensive experience and training in the relevant field, and notes that law enforcement relies upon that expertise to identify gang members and stop gang activity. Indeed, it appears there are few individuals who could compete with his combination of training, credentials, field experience, and lived experience with gangs in San Diego.

Mr. Bowser's declaration and supplemental declaration demonstrate substantial experience and specialized knowledge that would help any trier of fact understand the evidence or determine a fact in issue. *See* Fed. R. Evid. 702(a). Mr. Bowser has over 30 years of experience in gang intervention and prevention, and founded an organization, Community Assistance Support Team (CAST), that works directly with the Gang Unit of the San Diego Police and "all three police divisions that cover Southeast San Diego and . . . City Heights, as well as the probation department, U.S. Attorney's Office, San Diego County District Attorney, and San Diego County Sheriff." (Decl. ¶ 4, 5). A report from the San Diego Police Department to the San Diego City Counsel mentions CAST as integral to the San Diego Police Department's Gang Unit's work. (Supp Decl. ¶ 11, Exh. A). From 2012-2017, Mr. Bowser served as the Council District 8 Representative on the San Diego Commission on Gang Prevention and Intervention. (Decl. ¶ 6).

Mr. Bowser also brings valuable expertise as a former gang member—one of the founding members of the West Coast Crips—and witnessed the formation of an earlier iteration of LPK, the gang at issue in this case. (Supp. Decl. ¶ 6). Mr. Bowser personally knows a number of past and present LPK members, and has mentored at least ten individuals who were documented as LPK members.

(Supp. Decl. ¶ 8).  He has participated in over 100 gang interventions since 2010, and law enforcement calls him to assist in de-escalation efforts. (Supp. Decl. ¶ 9).  In addition to participating in 25 trainings on gangs and gang intervention since 2010, he has led trainings and presentations alongside prosecutors and police officers *for* law enforcement, including the International Association of Chiefs of Police. (Supp. Decl. ¶ 12).  Mr. Bowser's expertise is thus well established.

The Court further finds that Mr. Bowser's declaration is based on sufficient facts, and is the product of methods commonly deployed in matters involving gangs.  *See* Fed. R. Evid. 702(b)-(c).  Mr. Bowser considered the relevant oral and written pleadings, declarations, transcripts, hearings, and applicable statutes in this case and the state case. (Decl. ¶ 11; Supp. Decl. ¶ 3.).  The methods and principles he used to reach his conclusions regarding what certain symbols and jargon meant, and the extent to which they indicated gang activity or community activity, resemble those proffered in Detective Sidhu's declaration: interpreting Facebook posts and photographs, decoding recorded conversations based on experience observing and interacting with gang members, and comparing the arrest warrants in this case to other arrest warrants he has examined, even if he does not prepare arrest warrants himself. (*Compare* ECF No. 37-5 "Sidhu Decl." with Decl. and Supp. Decl.).  Mr. Bowser applied the same intellectual rigor of other purported gang experts. *See Kumho*, 526 U.S. at 158.

With respect to reliability, Defendants argue only that Mr. Bowser did not specify how long he spent reviewing the documents and "disregard[ed] critical detail" regarding the bases for his knowledge of LPK and law enforcement practices, which suggests unreliability.  (Mot. at 7).  To the extent Mr. Bowser's initial Declaration failed to address the bases for his knowledge, the Court finds the Supplemental Declaration cured any deficiency.  The Court concludes Mr. Bowser has reliably applied the principles and methods derived from his decades

of working with law enforcement, gang members, and communities to the facts of this case.  See Fed. R. Evid. 702(d).

### III. CONCLUSION

Defendants' objections are overruled and the Motion to Strike is DENIED without prejudice. (ECF No. 40).

IT IS SO ORDERED.

Dated:  April 22, 2019

_____
Honorable Barry Ted Moskowitz
United States District Judge